MIETKIEWSKI *v.* WAYNE COUNTY ROAD COMMISSIONERS.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—LETTERS IN FILES OF DEPARTMENT OF LABOR PROPERLY CONSIDERED.

Letters from an employer and its insurer, properly in the files of the department of labor and industry, showing that a claim for compensation had been made by an injured employee within the statutory period, were properly considered by the department in making an award under the workmen's compensation act, although they were not offered in evidence at the hearing.

2. SAME—UNREASONABLE REFUSAL OF MEDICAL ATTENTION.

The finding of the department that plaintiff, who was a foreigner unable to talk English without an interpreter, did not unreasonably refuse the medical attention tendered him by the employer and its insurer, *held*, justified by the record.

Certiorari to Department of Labor and Industry. Submitted April 10, 1924.   (Docket No. 30.)   Decided June 2, 1924.

Charles Mietkiewski presented his claim for compensation against the Wayne county road commissioners for an accidental injury in defendant's employ.   From an order awarding compensation, defendant and the General Accident, Fire & Life Assurance Corporation, Limited, insurer, bring certiorari. Affirmed.

*Kerr, Lacey & Scroggie,* for appellants.

MOORE, J.   Defendants seek by this proceeding to review the action of the department of labor and industry.

We quote from the return:

"Findings of the Commission on Hearing on Review.

"Charles Mietkiewski, the applicant in this case, was in the employ of the Wayne county road commissioners on June 24, 1921.    On that date he suffered a severe injury to his back, when he was struck by a cement mixer scoop.    The employer immediately took him to a hospital in the city of Ypsilanti, where he remained for eighteen days.    Not being satisfied with the treatment there he left to stay with a friend on a farm.    After staying with his friend for about eighteen days his condition became so bad that he called upon Dr. Pangner in Detroit, who immediately placed him in a hospital and placed a cast upon him. After the cast had been on the patient for a number of weeks, it irritated him to such an extent that the doctors were forced to remove it.    Being without funds he was unable to have another cast put on.

"The respondents in this case are denying liability on the ground that no proper claim for compensation was made within the statutory period; and upon the further ground, that the applicant unreasonably refused medical treatment tendered him by the respondent insurance company.    *    *    *

"The compensation law specifically provides that an agreement shall be tendered an injured employee immediately after the accident and they shall forward said agreement to this commission within the second week.    It provides further that the first weekly payment of compensation should be made at the end of the second week.

"This man was immediately taken in charge by the employer and was in a hospital selected by them for eighteen days following the accident.    During that period he should have been tendered an agreement and compensation should have been paid him on the fourteenth day.    Instead of complying with the law, the respondents permitted the man to leave the hospital and forced him to seek medical attention.    On July 5, 1921, a copy of the report of compensable accident was filed by the employer.    On July 27, 1921, no agreement having been filed in the meantime, this report was called to the attention of the respondent insurance company.    The insurance company answered that letter on July 30, 1921, but did nothing

further in the case.   On November 15, 1921, there was filed with this commission a copy of a claim for compensation.   The foot-note of this claim directs that a copy also be served upon the employer.   On November 19, 1921, the insurance company was again requested to take action in the case.   On December 6th, the following letter was received from the insurance company:

" 'In reply to your favor of the 5th instant we advise that we have tendered this employee medical services, and he has refused to accept the same to date.   We are in receipt of a notice to employer of claim for injury, and would appreciate it if we could temporarily withhold a denial of liability in compliance with Rule 4.   We think that eventually we can persuade this employee to accept the treatment that he should receive.   We assure you the matter will have our attention within a week or ten days, at which time we will definitely advise you.'

"The testimony in this case shows, that the applicant went to the office of the employer and was taken by the secretary of the employer to the insurance company.   It was not brought out at the hearing what conversation was had at either place.

"The respondents claim that the applicant is not entitled to compensation because he unreasonably refused medical attention.   It is their contention that medical treatment was tendered him by Mr. Anderson, an adjuster for the respondent insurance company. It is not clear when this tender was made except that it was some time after the applicant left Providence hospital.

"The treatment tendered the applicant at that time was an offer to stay in a room equipped with cots, operated by the respondent insurance company in connection with their offices in Detroit, which we cannot consider reasonable hospital attention.   In any event, the applicant would be entitled to compensation up to that date.   An agreement should have been tendered him and compensation paid.   If the applicant then refused reasonable medical attention, a petition to suspend payments could have been filed.

"The respondent insurance company also contends that on November 22, 1921, it tendered the applicant

an operation known as the Albee operation. This consists of transplanting a portion of the bone from the leg into the vertebrae of the spine at the seat of the injury. This operation is conceded to be a major one and, if tendered, the applicant could not be compelled to accept it.

"The testimony in this case shows that the applicant has been improving steadily since his injury. Dr. Pangner testified that he would not advise an operation. In view of his testimony and in view of the fact that the operation tendered was a major one, we do not think it reasonable to demand an operation of the applicant.

"It appears further in this case, that this man is illiterate and unable to talk English clearly without the aid of an interpreter, and that when he attempted to negotiate with the respondent insurance company through an interpreter, the interpreter was ejected from the insurance company's offices because, according to the adjuster, he used obscene language. In view of the applicant's inability to understand English, we question very much if he was made to understand, at any time, that medical attention was being tendered him.

"After a careful consideration of the entire files of the case, we find:

"1. That claim for compensation was made by the applicant within the statutory period.

"2. That the applicant did not unreasonably refuse the medical attention tendered him by the respondents; and

"3. That the applicant is entitled to recover from the respondent all moneys expended for medical attention within ninety days following the accident.

"It therefore follows that the decision of the deputy commissioner should be in all things affirmed.

"Dated and entered at Lansing, Michigan, this 1st day of August A. D. 1922."

It is claimed, we quote from the brief:

"1. Claim for compensation was not made by the applicant within the time prescribed by law and in accordance therewith."

Accompanying the return to the writ is the following:

"Notice to Employer of Claim for Injury.

"Under Act No. 10 of Public Acts Extra Session 1912 (Employer's Liability and Workmen's Compensation Law).

"To WAYNE COUNTY ROAD COMMISSIONERS,

"Detroit, Wayne County, Michigan.

"You will take notice that according to the provisions of Act No. 10 of Public Acts, Extra Session 1912, Charles Mietkiewski hereby makes claim for compensation for injury received by him while in your employ.

"Name of employee, Charles Mietkiewski.

"Post office address, 5507 Dubois street, Detroit, Mich.

"The accident occurred the 24th day of June, 1921, at Sumpter Road, Michigan.

"The nature of the injury is as follows:  Crushed back and leg.

      "Signature, CHARLES MIETKIEWSKI.

        "Address, 5507 Dubois St., Detroit, Mich.

"Dated at Detroit, Mich., this 14th day of November, 1921."

      "BOARD OF COUNTY ROAD COMMISSIONERS
             WAYNE COUNTY.
        "1103 Real Estate Exchange,
       "Detroit, Mich., July 15, 1922.

"Mr. RAY DERHAM, Deputy Commissioner,

    Michigan Dep't of Labor & Industry.

"Lansing, Mich.

"*Dear Sir:* Replying to your letter of July 12th relative to Charles Mietkiewski:

"On November 18th, 1921, we wrote the following letter to the General Accident Fire & Life Assurance Corp., 469 Ledyard, Detroit:

   "'Herewith find Notice to Employer of Claim for Injury of Charles Mietkiewski, 5507 Dubois street, Detroit.'

"We trust this answers your inquiry.

      "Yours very truly,

         "BOARD OF COUNTY ROAD COM'RS.

            "E. G. RICE, Sec'y."

"GENERAL ACCIDENT FIRE AND LIFE ASSURANCE
CORPORATION, LTD.

"Detroit, Mich., December 6, 1921.

"DEPT. OF LABOR & INDUSTRY,

"Lansing, Mich.

"*Re:* Bd. County Road Com. —— C. Mietkiewski,
6-24-21. M. 14402.

"*Gentlemen:* In reply to your favor of the 5th in-
stant we advise that we have tendered this employee
medical services, and he has refused to accept the same
to date. We are in receipt of a notice to employer of
claim for injury, and would appreciate it if we could
temporarily withhold a denial of liability in compliance
with Rule 4. We think that eventually we can per-
suade this employee to accept the treatment that he
should receive. We assure you the matter will have
our attention within a week or 10 days, at which time
we will definitely advise you.

"Yours very truly,

"FRED A. ZIERLEYN,

C. C. Mgr."

Counsel say these letters were not offered in evidence
and should not have had the consideration of the board
of labor and industry; citing *Blowzina* v. *Castile Min-
ing Co.*, 210 Mich. 349. The case cited is unlike the
instant case. In that case the board acted upon hear-
say evidence. In the instant case the board gave the
defendants credit for meaning just what was said in
a letter which was properly in their files and written
by the appealing defendant.

We again quote from the brief of counsel:

"2. Applicant's conduct and attitude in refusing to
accept and or receive medical service which was
tendered, including hospital treatment if needs be, was
so unreasonable that compensation should have been
denied."

In this connection it may be well to quote some of
the testimony of the surgeon of the defendant:

"*Q.* You say you did examine the X-ray plates?
"*A.* Yes.

"*Q.* Had you previously recommended any course of treatment to him?

"*A.* We recommended—I think it was the early part of November—that he permit us to perform an Albee operation, that is transplant the bone from the leg into the vertebrae of the spine at the seat of the injury.

"*Q.* What is the purpose of that?

"*A.* That is an artificial support to the spine.

"*Q* Immobilization?

"*A.* Immobilization.

"*Q.* Does that transplanting a bone make a permanent condition there?

"*A.* That is a permanent support.

"*Q.* What if any relation does that operation have to a cast or brace which you talked about?

"*A.* It is more effective.    We get results, that is, the results will be quicker than through a brace or cast.

"*Q.* When is it usual, or do doctors recommend such operations being performed?

"*A.* Those operations are performed under different circumstances, when there is evidence of pressure on the cord, and nerve root, as they leave the spinal column, or where there is a fracture, and we get evidence of callous formation.

"*Q.* What symptoms or what disease would it indicate to you if he at one time contended that there was numbness in his extremities?

"*A.* It was undoubtedly a slight involvement of pressure on the nerve roots.

"*Q.* Did you perform an operation in October when you first saw him?

"*A.* I do not think we had an opportunity to as he did not return until the early part of November.    We had to correlate our findings from the X-ray and Dr. Blodgett's report before we could honestly offer him that operation.

"*Q.* Was that done, do you know?

"*A.* That was done.

"*Q.* What was his answer?

"*A.* He refused.

"*Q.* Was there any statement made as to the cost of that operation?

"*A.* We offered free treatment, we could take care of all expenses.

"*Q.* What did he say to that?

"*A.* He refused to undergo any operation.

"*Q.* Doctor, are those operations successful?

"*A.* Those operations are not always successful as regards immobilization, but they are not imminently dangerous.

"*Q.* The question of the success of the operation depends upon the healing of the bone or the knitting of the bone and the vertebrae?

"*A.* The transplanting and the response of the bone to that.

"*Q.* What percentage are successful operations of the Albee operation?

"*A.* I cannot answer that.    I do not recall having seen case reports enough to the effect.    *    *    *

"*Q.* Have you examined this man so far as heart condition and other conditions are concerned?

"*A.* No, I did not.

"*Q.* Why didn't you preparatory to the operation?

"*A.* Those things we always do in the hospital before the operation is undertaken.

"*Q.* Did you offer to perform such an operation for this man?

"*A.* We did.

"*Q.* What was his answer?

"*A.* He refused to have it done."

The other objections to the award have been considered but do not call for discussion.    We do not find any reversible error.

The award is affirmed, with costs to the appellee.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.